# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RANDIE MULLEN, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Civil Action No. 16-30 |
| | ) Hon. Nora Barry Fischer |
| SAM'S EAST, INC., | ) ) |
| Defendant. | ) |

## **MEMORANDUM OPINION**

I. INTRODUCTION

This lawsuit arises from injuries that Plaintiff Randie Mullen sustained while shopping at Defendant's store located in West Mifflin, Pennsylvania. Defendant filed a Motion for Summary Judgment, supporting brief, and a Concise Statement of Material Facts on December 23, 2016. (Docket Nos. 39, 40, 41). Plaintiff filed a brief in opposition and a response to Defendant's Concise Statement of Material Facts on January 23, 2017. (Docket Nos. 42, 43). The parties filed their respective reply briefs on February 2, 2017, and the Court held oral argument on February 10, 2017. (Docket Nos. 44, 45, 46). After careful consideration of the parties' positions and having evaluated all of the evidence in light of the appropriate standard governing motions for summary judgment, and for the following reasons, Defendant's Motion for Summary Judgment will be DENIED.

II. BACKGROUND

The following facts are undisputed, except as indicated, and are pertinent to the instant motion. At approximately 8:00 a.m. on June 7, 2014, Plaintiff arrived at Defendant's store for the specific purpose of purchasing a bucket of chlorine tablets for her swimming pool. (Docket No. 41 at ¶¶ 3, 7; Docket No. 43 at ¶¶ 3, 7). Defendant had a display of buckets of chlorine

1

tablets, located near the entrance of the store, with the buckets stacked three high in eight separate columns on top of a pallet. (Docket No. 43 at ¶ 1; Docket No. 44 at ¶ 1). Defendant's corporate representative, Steven Zomp, estimated that the display was fifty-two to fifty-four inches high, including the pallet. (Docket No. 43 at ¶ 2; Docket No. 44 at ¶ 2). Because each bucket contains a "lip" into which the bucket above is inserted, customers must lift the bucket rather than pulling it straight out towards them. (Docket No. 43 at ¶ 3; Docket No. 44 at ¶ 3).

After Plaintiff took a bucket of chlorine tablets from the top left of the display and placed it in her cart, two forty-pound buckets fell from the display. (Docket No. 41 at ¶¶ 3-4; Docket No. 43 at ¶¶ 3-4; Docket No. 43 at ¶ 9; Docket No. 44 at ¶ 9). One or two of the buckets struck Plaintiff's right leg. (Docket No. 41 at ¶¶ 3; Docket No. 43 at ¶¶ 3; Docket No. 43 at ¶ 9; Docket No. 44 at ¶ 9). "'As she began to leave the area to continue shopping, two of the heavy buckets, from a different location in the stack than where [Plaintiff] had taken a bucket from, abruptly fell atop [her,] and chlorine tablets spilled out from them.'" (Docket No. 41 at ¶ 5 (quoting Docket No. 1-2 at ¶ 12); Docket No. 43 at ¶ 5). Plaintiff alleges that she suffered a fractured right fibula and a skin burn as a result of the incident. (Docket No. 41 at ¶ 6; Docket No. 43 at ¶ 6).

At her deposition, Plaintiff testified that she had purchased similar buckets of chlorine tablets from Defendant's store in the past, that she was aware that the buckets weighed forty pounds, and that she did not require assistance in selecting a bucket from the display and placing it in her shopping cart. (Docket No. 41 at ¶¶ 8-9; Docket No. 43 at ¶¶ 8-9). Specifically, Plaintiff stated:

> Q. Prior to this date, June 7, 2014, had you ever asked for assistance from anybody [who] worked at Sam's Club with removal of a bucket and putting it in your cart?
> A. No.
> Q. It was something you were always able to do yourself?
> A. Yes.

2

> Q. On this day, June 7, 2014, did you ever ask anyone for assistance in putting the — taking the bucket off the display?
> A. No.
> Q. Did you ever ask anybody for assistance in taking the bucket off the display and then putting it in your cart?
> A. No.
>
> \* \* \*
>
> Q. Did you have any trouble when you lifted up the bucket and took it off the display?
> A. It was heavy.
> Q. But did you have trouble with it? Did you feel like, oh, gosh, this is too heavy, I need to put it back down? Did you have any trouble lifting it?
> A. No. I lifted it up and put it in my buggy.

(Docket No. 41 at ¶ 9 (quoting Docket No. 39-1 at 5-7); Docket No. 43 at ¶ 9). Plaintiff opined that there were approximately eight to ten rows of buckets and that they were stacked in columns of three. (Docket No. 41 at ¶ 10; Docket No. 43 at ¶ 10). Plaintiff described the display as follows:

> Q. When you looked at the display when you came into [sic] the store[,] did you think to yourself that perhaps you should seek assistance given the size of the display?
> A. No.
> Q. As I understand it[,] these buckets — the bucket bottom nestles into [sic] the lid of the bucket underneath of it. Is that your understanding?
> A. That is correct.
> Q. They're built that way, to nestle in to each other; is that right?
> A. That's correct.
> Q. Were any of the buckets when you came to the display not nestled as they should be?
> A. I couldn't tell that.
> Q. So none that you saw were not nestled as they should be?
> A. I couldn't tell that. They were perfectly stacked. It was a beautiful display. It was perfect. There was nothing missing.

(Docket No. 41 at ¶ 10 (quoting Docket No. 39-1 at 6); Docket No. 43 at ¶ 10).

Plaintiff testified that she took a bucket from the column of buckets furthest from the entrance of the store and that she did not see the buckets fall from the display. (Docket No. 41 at ¶¶ 11-12; Docket No. 43 at ¶¶ 11-12). She stated that the buckets had fallen from the area to the

right of the area where she had removed her bucket. (Docket No. 43 at ¶ 9; Docket No. 44 at ¶ 9). A store greeter, Helen Patterson, saw Plaintiff before the alleged incident and attended to her after it. (Docket No. 41 at ¶ 13; Docket No. 43 at ¶ 13). No one witnessed the buckets falling from the display, and Plaintiff did not testify as to how the buckets fell. (Docket No. 41 at ¶¶ 13, 15; Docket No. 43 at ¶¶ 13, 15; Docket No. 43 at ¶ 12; Docket No. 44 at ¶ 12).

Felicia Jackson, Defendant's Floor Merchandising Manager, testified that the chlorine buckets are stacked overnight. (Docket No. 43 at ¶ 5; Docket No. 44 at ¶ 5). Mr. Zomp stated that associates who stack merchandise "'would get a feel for whether the merchandise is stable to shop and if it is questionable, they would bump it.'" (Docket No. 43 at ¶ 15; Docket No. 44 at ¶ 15 (quoting Docket No. 44-1 at 10)). On the day prior to Plaintiff's accident, nine chlorine buckets were sold at Defendant's premises. (Docket No. 43 at ¶ 6; Docket No. 44 at ¶ 6). Defendant's store opened at 7:00 a.m. on June 7, 2014, and no one purchased any chlorine buckets before Plaintiff. (Docket No. 43 at ¶ 7; Docket No. 44 at ¶ 7). After Plaintiff's accident, Ms. Jackson was the only manager who attended to Plaintiff. (Docket No. 43 at ¶ 17; Docket No. 44 at ¶ 17). At her deposition, Ms. Jackson testified that she did not check the display and did not know whether anyone checked it. (Docket No. 43 at ¶ 20; Docket No. 44 at ¶ 20). When questioned why she had written in a report that the display was stable, Ms. Jackson responded, "I don't know ma'am. I assume I saw it." (Docket No. 43 at ¶ 20; Docket No. 44 at ¶ 20).

III. PROCEDURAL HISTORY

Plaintiff initiated this action by filing a Complaint in the Court of Common Pleas of Allegheny County on December 8, 2015. (Docket No. 1-2). Based upon diversity jurisdiction, the matter was removed to this Court on January 8, 2016. (Docket No. 1). As noted, Defendant's Motion is fully briefed and ripe for disposition.

IV. LEGAL STANDARD

A grant of summary judgment is appropriate when the moving party establishes "'that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Heffernan v. City of Paterson*, 777 F.3d 147, 151 (3d Cir. 2015) (quoting FED. R. CIV. P. 56(a)). A genuine dispute of material fact is one that could affect the outcome of litigation. *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 643 (3d Cir. 2015) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). However, "'[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial.'" *N.A.A.C.P. v. N. Hudson Reg'l Fire & Rescue*, 665 F.3d 464, 475 (3d Cir. 2011) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The initial burden is on the moving party to adduce evidence illustrating a lack of genuine disputes. *Hugh v. Butler Cty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)). Once the moving party satisfies its burden, the non-moving party must present sufficient evidence of a genuine dispute in rebuttal. *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015) (citing *Matsushita Elec. Indus. Co.*, 475 U.S. at 587). When considering the parties' arguments, the Court is required to view all facts and draw all inferences in the light most favorable to the non-moving party. *Id.* (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)). Further, the benefit of the doubt will be given to allegations of the non-moving party when in conflict with the moving party's claims. *Bialko v. Quaker Oats Co.*, 434 F. App'x 139, 141 n.4 (3d Cir. 2011) (citing *Valhal Corp. v. Sullivan Assocs.*, 44 F.3d 195, 200 (3d Cir. 1995)).

Nonetheless, a well-supported motion for summary judgment will not be defeated where

5

the non-moving party merely reasserts factual allegations contained in the pleadings. *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 252 (3d Cir. 2010) (citing *Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir. 1989)). The non-moving party must resort to affidavits, depositions, admissions, and/or interrogatory answers to demonstrate the existence of a genuine dispute. *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 773 (3d Cir. 2013) (citing *Celotex Corp.*, 477 U.S. at 324).

V. DISCUSSION

Defendant argues that summary judgment must be granted in its favor because "Plaintiff's case rests entirely on speculation." (Docket No. 40 at 6). Specifically, Defendant asserts that the absence of direct evidence of what caused the bucket to fall is fatal to Plaintiff's case because the "mere happening" of the bucket falling is insufficient to establish negligence. (*Id.* at 7, 11). Defendant contends that Plaintiff's expert, Keith A. Bergman, P.E., is unable to point to any evidence establishing that the buckets were improperly stacked. (*Id.* at 9-10). In response, Plaintiff counters that while Defendant has chosen to remain ignorant of the cause of the bucket falling, she has presented sufficient circumstantial evidence to show that Defendant's negligence caused her injuries. (Docket No. 42 at 6). In reply, Defendant maintains that Plaintiff's case must be dismissed because she has not offered any evidence as to how or why the bucket fell. (Docket No. 45).

To prevail on a claim for negligence in Pennsylvania, Plaintiff must establish the following elements: (1) a duty or obligation recognized by the law, requiring the actor to conform to a certain standard of conduct; (2) a failure to conform to the standard required; (3) a causal connection between the conduct and the resulting injury; and (4) actual loss or damage

6

resulting to the interests of another. *Lichtenstein v. Kidder, Peabody & Co.*, 840 F. Supp. 374, 386 (W.D. Pa. 1993); *Morena v. South Hills Health Sys.*, 462 A.2d 680, 684 n.5 (Pa. 1983).

Store owners owe a duty of care to business invitees under section 343 of the Restatement (Second) of Torts. RESTATEMENT (SECOND) OF TORTS § 343 (1965); *see also Myers v. Penn Traffic Co.*, 606 A.2d 926, 928 (Pa. Super. Ct. 1992). That duty is breached if the owner: (1) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to business invitees; (2) should expect that invitees will not discover or realize the danger, or will fail to protect themselves against it; and (3) fails to exercise reasonable care to protect them against the danger. *Estate of Swift v. Northeastern Hosp.*, 690 A.2d 719, 723 (Pa. Super. Ct. 1997). Business invitees "must prove either the proprietor of the land had a hand in creating the harmful condition, or he had actual or constructive notice of such condition." *Id.*

"*Res ipsa loquitur*, meaning literally 'the thing speaks for itself,' is 'a shorthand expression for circumstantial proof of negligence — a rule of evidence.'" *Quinby v. Plumsteadville Family Practice, Inc.*, 907 A.2d 1061, 1071 (Pa. 2006) (quoting *Gilbert v. Korvette, Inc.*, 327 A.2d 94, 99 (Pa. 1974)). It "allows juries to infer negligence from the circumstances surrounding the injury." *Quinby*, 907 A.2d at 1071. Pennsylvania has adopted the doctrine of *res ipsa loquitur*, but it does not apply "when a patron suffers an injury in a store from a transitory danger," such as in instances "in which a patron was struck by falling goods." *Neve v. Insalaco's*, 771 A.2d 786, 789 (Pa. Super. Ct. 2001); *see also Gilbert v. Korvette, Inc.*, 327 A.2d at 100 (adopting the doctrine of *res ipsa loquitur*). Although the doctrine of *res ipsa loquitur* does not apply in such circumstances, it is well settled that "[u]nder Pennsylvania law[,]

7

the proof necessary to establish negligence need be only slight in cases of falling objects." *Andrasko v. Chamberlain Mfg. Corp.*, 608 F.2d 944, 948 (3d Cir. 1979).

It is a well-settled principle of Pennsylvania law that a jury "may not be permitted to reach its verdict merely on the basis of speculation or conjecture, [as] there must be evidence upon which logically its conclusion may be based." *Smith v. Bell Tel. Co.*, 153 A.2d 477, 479 (Pa. 1959). That said, "this does not mean that the jury may not draw inferences based upon all the evidence and the jurors' own knowledge and experiences, for that is, of course, the very heart of the jury's function." *Id.* Rather, "[i]t means only that the evidence presented must be such that by reasoning from it, without resort to prejudice or guess, a jury can reach the conclusion sought by plaintiff, and not that that conclusion must be the only one which logically can be reached." *Id.* Thus, a plaintiff need not "prove with mathematical exactness that the accident could only have been caused in one manner to the exclusion of all other possibilities." *Cuthbert v. Philadelphia*, 209 A.2d 261, 263 (Pa. 1965). "It is not necessary . . . that every fact or circumstance point unerringly to liability; it is enough that there be sufficient facts for the jury to say reasonably that the preponderance favors liability." *McMillan v. Mountain Laurel Racing, Inc.*, 367 A.2d 1106, 1111 (Pa. Super Ct. 1976) (internal quotations omitted).

Viewing the record in the light most favorable to Plaintiff, as this Court must, the Court finds that the question of causation in this case presents disputed issues of fact for a jury to resolve. Specifically, it was reasonably foreseeable that the forty-pound buckets of chlorine tablets, stacked three high in eight separate columns on top of a pallet, could fall when customers lifted the buckets to remove them from the display. (*See* Docket No. 41 at ¶ 3; Docket No. 43 at ¶¶ 1, 3; Docket No. 44 at ¶¶ 1, 3). Thus, Defendant should have realized that the display, which was located at the front of the store and was created for customers' self-service, potentially

involved an unreasonable risk of harm. (Docket No. 43-5); *see also* RESTATEMENT (SECOND) OF TORTS § 343 (1965). Although it is undisputed that nine buckets were sold the day before Plaintiff's accident, (Docket No. 43 at ¶ 6; Docket No. 44 at ¶ 6), Defendant offers no evidence as to how the display was restacked or how the display became, in Plaintiff's words, "perfectly stacked" with "nothing missing," (Docket No. 41 at ¶ 10 (quoting Docket No. 39-1 at 6); Docket No. 43 at ¶ 10). The Court assumes that the display was restacked overnight, as indicated in Ms. Jackson's testimony described below. Given these circumstances, Defendant should have expected that customers would not realize the danger or would fail to protect themselves against it. (Docket No. 43-5); *see also* RESTATEMENT (SECOND) OF TORTS § 343 (1965).

In this Court's estimation, the record establishes that Defendant may have failed to exercise reasonable care to protect its customers against the danger posed by the display. RESTATEMENT (SECOND) OF TORTS § 343 (1965). Defendant's corporate representative, Mr. Zomp, testified that there were no signs advising customers to request assistance in handling the buckets. (Docket No. 43-2 at 6 (confirming that customers "wouldn't see any signs anywhere saying ask for assistance"). Yet, Defendant must have recognized that the buckets could possibly fall, as it employs a "bump test":

> Q. What's a bump test?
> A. The bump test is when you have the items or the pallet — the product set there, you bump into it to make sure that it's stable and it's going to be safe to shop.
> Q. Is there a standard as to what items you perform a bump test on?
> A. Just anything that would easily fall over or would be unsafe to fall on to somebody.
> Q. Do you keep records of bump tests that are performed?
> A. We do not.
> Q. And is that something the associates do or that the supervisor does?
> A. The associate who does who sets the products does it.
> Q. Do you have any way to know whether an associate has performed a bump test on a product?

9

| | |
|---|---|
| A. | We do not. We would assume that if it is there, it's set. We can also go and bump it ourselves but we would assume that it was done. |
| Q. | Have you had overnight employees that you had to reprimand for not performing bump tests? |
| A. | No. |
| Q. | Is it left to the associate's discretion whether a bump test is needed? |
| A. | As they're stacking the merchandise they would get a feel for whether the merchandise is stable to shop and if it's questionable, they would bump it. |
| Q. | So they have discretion about whether they would need to bump it? |
| A. | Yes. |
| Q. | Are there any products that Sam's requires the associates to perform a bump test on? |
| A. | Technically they should do it on everything that they set, but the pallet of water is not going to need bumped because it's not going to move. |

(Docket No. 43-2 at 6-7). Mr. Zomp confirmed that after he learned about Plaintiff's accident, he did not talk to any of the associates about the stacking of the buckets, and he did not ask anyone whether a bump test was performed on them. (*Id.* at 8).

Ms. Jackson, Defendant's Floor Merchandising Manager, was the only manager who attended to Plaintiff after the accident. (Docket No. 43 at ¶ 17; Docket No. 44 at ¶ 17). At her deposition, Ms. Jackson testified that the chlorine buckets are stacked overnight. (Docket No. 43 at ¶ 5; Docket No. 44 at ¶ 5). She stated that she did not check the display and did not know whether anyone checked it. (Docket No. 43 at ¶ 20; Docket No. 44 at ¶ 20). When questioned why she had written in a report that the display was stable, Ms. Jackson responded, "I don't know ma'am. I assume I saw it." (Docket No. 43 at ¶ 20; Docket No. 44 at ¶ 20). This Court has repeatedly found that a key decision maker's lack of recollection may support denial of a summary judgment motion. *See, e.g.*, *Marconi v. Moon Area Sch. Dist.*, 104 F. Supp. 3d 686, 703-04 (W.D. Pa. 2015); *Hendricks v. Pittsburgh Pub. Sch.*, No. 13-CV-491, 2015 U.S. Dist. LEXIS 15969, at *16 (W.D. Pa. Feb. 10, 2015) (finding a lack of recollection supported denial of a motion for summary judgment).

It is undisputed that on the day prior to Plaintiff's accident, nine chlorine buckets were sold at Defendant's premises. (Docket No. 43 at ¶ 6; Docket No. 44 at ¶ 6). Defendant's store opened at 7:00 a.m. on June 7, 2014, and no one purchased any chlorine buckets before Plaintiff. (Docket No. 43 at ¶ 7; Docket No. 44 at ¶ 7). Indeed, the video footage, which this Court viewed at the request of both parties, confirms that the display remained untouched until Plaintiff entered the store. (*See* Docket No. 43-5).

Given that there are disputes of fact as to whether a bump test was performed after the chlorine buckets were stacked overnight and whether the display was stable, the credibility of Defendant's witnesses must be determined by a jury. *See, e.g.*, *Gomez v. Markley*, No. 07-CV-868, 2011 U.S. Dist. LEXIS 69174, at *20-21 (W.D. Pa. June 28, 2011), *aff'd*, 493 F. App'x 334 (3d Cir. 2012) ("Because it is the jury's role to determine the credibility of the witnesses and to weigh the evidence, the Court will not substitute its judgment . . . for that of the jury.") (footnote omitted); *McDaniel v. Kidde Residential & Commercial*, No. 12-CV-1439, 2015 U.S. Dist. LEXIS 139905, at *4 (W.D. Pa. Oct. 14, 2015) (same). *See also Warriner v. Wal-Mart Stores East, LP*, 832 F. Supp. 2d 78 (D. Me. Dec. 13, 2011) (denying summary judgment and concluding that there was a factual question as to whether a bottle that fell from a shelf should have been subject to the bump test); *Neville v. Wal-Mart Stores E., L.P.*, No. 06-CV-653, 2008 U.S. Dist. LEXIS 56366, at *15-16 (W.D. Ky. July 23, 2008) (denying summary judgment and finding that although the evidence was "relatively scant," the jury would not be left to speculate as to how the accident occurred because it could evaluate "Defendant's testimony as to the relative locations of the employee who was allegedly stocking merchandise and the place of injury, as well as the effect of a 'bump' test which Defendant conducted on the display subsequent to the accident"); *Portis v. Wal-Mart Stores, Inc.*, No. 07-CV-557, 2008 U.S. Dist.

LEXIS 50335, at *7 (S.D. Ala. July 1, 2008) (finding that there was no evidence that the defendant "performed a bump test on the shelf after stacking the comforters that fell on [the plaintiff], or after those comforters fell on [the plaintiff] to test the stability of the remaining comforters" and denying summary judgment).

To this end, the Court also notes that Defendant makes much of Plaintiff's testimony that "[the buckets] were perfectly stacked. It was a beautiful display. It was perfect. There was nothing missing." (Docket No. 40 at 7 (quoting Docket No. 39-1 at 6)). The video footage establishes that Plaintiff did not stand before the display to assess whether the buckets were "perfectly stacked." (Docket No. 43-5). Rather, she entered the store, reached for a bucket, and the accident then occurred. (*Id.*). Once again, her testimony should be evaluated by a jury. *See Gomez*, 2011 U.S. Dist. LEXIS 69174, at *20-21; *McDaniel*, 2015 U.S. Dist. LEXIS 139905, at *4.

Having carefully reviewed the record in this matter, and considering the same in the light most favorable to Plaintiff, there is sufficient evidence through which a jury could infer the Defendant had notice of a harmful condition. *See Estate of Swift*, 690 A.2d at 723; *see also Universal Underwriters Ins. Co. v. Dedicated Logistics, Inc.*, No. 11-CV-1153, 2014 U.S. Dist. LEXIS 192852 (W.D. Pa. June 4, 2014) (rejecting the defendant's argument that it did not have actual or constructive notice of an alleged defective height of an electrical wire because the evidence upon which it relied "[was] not conclusive and the credibility of its witnesses on this critical point remain[ed] subject to legitimate impeachment") (citing *El v. SEPTA*, 479 F.3d 232 (3d Cir. Mar. 19, 2007) ("When a witness's credibility is critical to supporting the necessary findings of fact, the District Court must consider whether there are sufficient grounds for impeachment that would place the facts to which he testifies in legitimate dispute.")).

The Court further finds that the cases upon which Defendant relies in support of its motion are distinguishable. Defendant primarily relies upon *Cohen v. Penn Fruit Co.*, 159 A.2d 558 (Pa. Super. Ct. 1960), wherein the plaintiff was injured when a can of pineapple juice fell from a store display and struck her foot while she was selecting a jar of tomato juice from the same display. (Docket No. 40 at 8-9). In *Cohen*, the Superior Court held that the trial judge did not err in finding that the defendant was entitled to judgment because "[t]here [was] *no evidence* to show from where the particular can which struck [the plaintiff] came." 159 A.2d at 560 (emphasis added). Such circumstances are not present here, as "two of the heavy buckets, from a different location in the stack than where [Plaintiff] had taken a bucket from, abruptly fell atop [her,] and chlorine tablets spilled out from them.'" (Docket No. 41 at ¶ 5 (quoting Docket No. 1-2 at ¶ 12); Docket No. 43 at ¶ 5; *see also* Docket No. 43 at ¶ 9; Docket No. 44 at ¶ 9 (wherein the parties agree that Plaintiff has stated that the buckets had fallen from the area to the right of the area where she had removed her bucket)). The Superior Court also opined that the can "*could have been dropped by a customer or fallen from a cart being pushed by a customer*." 159 A.2d at 561 (emphasis added). Once again, such circumstances are not present here because, as discussed above, the parties agree, and video footage confirms, that Defendant's store opened at 7:00 a.m. on June 7, 2014, and no one purchased any chlorine buckets before Plaintiff. (Docket No. 43 at ¶ 7; Docket No. 44 at ¶ 7; Docket No. 43-5). Similarly, *Stewart v. Morow*, 170 A.2d 338 (Pa. 1961), upon which Defendant relies in its reply, is inapplicable because there was *no* evidence in the record of negligent conduct that caused a mirror to fall. 170 A.2d at 340. The United States Court of Appeals for the Third Circuit has affirmed that "[t]he Pennsylvania Supreme Court has expressly limited the *Stewart* line of cases to those in which there was no evidence of negligence." *Andrasko*, 608 F.2d at 947 (reversing the District Court and remanding

13

for a new trial because the stacking of steel plates, each measuring four feet by eight feet and weighing approximately 400 pounds, provided sufficient evidence of negligence to submit the issue to a jury). Notwithstanding Defendant's failure to provide authority supporting its position, granting Defendant's motion would be inappropriate given the disputes of facts outlined above. Accordingly, Defendant's Motion for Summary Judgment is denied.

VI.    CONCLUSION

Based on the foregoing, Defendant's Motion for Summary Judgment, (Docket No. 39), is DENIED.

An appropriate Order follows.

*s/Nora Barry Fischer*
Nora Barry Fischer
U.S. District Judge

cc/ecf:  All counsel of record.